SAMUEL BRALEY *versus* JOHN GODDARD.

Where two parties entered into a written contract to cut certain timber, one to furnish money, teams and supplies, and the other his own services, and the latter to have one-fourth of the profits, and the former three-fourths, besides stumpage and interest on his advances, this did not constitute a co-partnership, if one of the parties had not, by the terms of the contract, an unqualified right to dispose of his own share of the lumber, nor any right to dispose of the remainder on any terms whatever. APPLETON, J., *dissenting.*

ASSUMPSIT. On the twenty-fifth day of October, 1855, the plaintiff and defendant entered into a written contract, stipulating that the defendant should furnish money, supplies and teams for a lumbering operation for the then ensuing logging season, with twelve teams, on townships No. 10, range 9, and No. 10, range 10, on the Moostick waters, and the plaintiff should give his whole personal attention, and have the entire charge of the cutting, hauling and driving of the lumber until it arrived at the city of St. John, N. B.; the defendant to have six per cent. on his advances, and six dollars per thousand stumpage, and the profits to be divided, one quarter to the plaintiff, and three quarters to the defendant.

The contract further provided, that, if Braley wished to saw his quarter part, Goddard should furnish mills without delay, at four dollars per thousand, or saw them at cost, charging a reasonable price for the use of the mill; or, if Braley preferred to sell his quarter, and could do so for cash or satisfactory paper, Goddard should take them at the price they could be sold for, or let the entire lot of logs go at the same price; or, if the party wishing to purchase should not want the entire lot, Braley might sell him his interest, if Goddard declined to take them, provided the party wanting the logs, as well as the pay he offered, should be satisfactory to Goddard, and not otherwise; "Goddard holding the lumber under this contract till the supplies, money and stumpage as above, at all events."

The plaintiff, called as a witness, testified that, pursuant to the contract, he cut, hauled and drove to the market a large quantity of logs, which arrived at St. John in the spring of 1856; that he afterwards made a demand upon Goddard for a settlement, but he declined settling; that there was a difference of opinion between him and Goddard as to whether Goddard should account for the doors, sashes and blinds made from the slabs; and that he had received from Goddard some hundreds of dollars.

The plaintiff offered to introduce other testimony in support of the action; when the counsel for the defendant raised the point that the written contract produced constituted a co-partnership, and that this action could not be sustained.

The presiding Judge, APPLETON, being of opinion that the agreement constituted a partnership between the parties, rejected the testimony offered as immaterial, and ordered a nonsuit.

The plaintiff excepted.

*J. A. Peters*, for the plaintiff, cited *Dwinel* v. *Stone*, 30 Maine, 384, and commented upon the opinion of the Court in that case, to show that the contract in the case at bar did not create a partnership. The title to the logs and lumber was in Goddard, and was never parted with by him. Braley had no title in them until the operation was finished and the bills paid; Braley's rights rested *in contract* merely. *Denny* v. *Cabot*, 6 Met., 82.

There was no community of *loss*. Braley was to have nothing, if there were no profits; but if Goddard made a heavy loss on the operation, Braley could lose no more than his labor. *Gilman* v. *Cunningham*, 42 Maine, 78. In the case of *Bearce* v. *Washburn*, 43 Maine, 564, there was a community of profit and loss. Not so in this case.

*Rowe & Bartlett*, for the defendant, argued that every element necessary to constitute a partnership existed in this case. The plaintiff being interested in the profits, was liable for the losses to the extent of the value of his labor.

Story on Partnership, § 23; *Dob* v. *Halsey*, 16 Johns., 34. The plaintiff was liable to lose his whole labor, even though the defendant lost nothing, as the latter was to be first repaid for his advances.

The plaintiff had a lien on one quarter of the lumber, after the expenses paid, so that a creditor of Goddard could have attached only the remaining three-fourths. This is not so when the contract is merely to pay a share of the profits as wages. The plaintiff was to have an interest in the property, after payment of stumpage and advances; an interest which he might sell, or compel the defendant to purchase, or he might force the defendant to join with him in the sale of the whole. Even if there was no partnership in the property itself, there might be in the profits. Story on Partnership, § 27. In either case, the plaintiff, being a partner, cannot recover in this action. Chitty's Pleadings, 39.

He cannot recover on his general count on the contract, unless he proves complete fulfilment of the stipulations on his part, and also, a demand upon the defendant, and a refusal to fulfil. This, he has not shown. Nor can he recover on his second count, because he has not alleged nor proved any profits received by the defendant.

If the plaintiff desires to recover his share of the timber, under the contract, or if there are unadjusted matters and claims between the parties, this is not the form of action for an adjustment.

The opinion of the Court was drawn up by

TENNEY, C. J.—It appears that the parties entered into a written contract, by which certain timber, standing upon the land described therein, was to be cut and taken to market by means of the services of the plaintiff. The defendant alone had acquired the right to cut the timber, and he only was accountable to the owner of the same. He was, also, to furnish the teams, money and supplies, to carry through the operation, and to receive six per cent. a year,

return on every dollar furnished, in addition to its cost, which, with six dollars for every thousand feet stumpage, was agreed to be deducted from the first proceeds which he should receive from the sales of the lumber.

The plaintiff was to give his whole personal attention to the cutting, hauling and driving the lumber, having the entire charge of the same, till its arrival at the city of St. John.

The profits of the operation were to be shared between the parties, one quarter to the plaintiff and three quarters to the defendant.

If the plaintiff should wish to saw his fourth part of the lumber, the defendant was to furnish mills for that purpose, on certain specified terms. But, if he should prefer to sell his portion of the lumber, he was entitled to do so, on the condition, that if he could sell it for cash or satisfactory paper, the defendant was entitled to take it at the same price, or permit the entire lot to be disposed of at that price; or, if the party, who might wish to purchase, did not desire to take the entire lot, the plaintiff could sell his interest if the defendant declined taking it, provided the party wishing to purchase, and the pay offered, should be satisfactory to the defendant, and not otherwise; the defendant holding the lumber under his control till the supplies, money and stumpage should be paid, at all events.

The plaintiff had not the unqualified right to dispose of the portion of lumber belonging to him, by the contract, after all the prior claims should be discharged; and no authority existed in him to dispose of any further portion on any terms whatever. This is entirely inconsistent with the rights of a member of a co-partnership, having the power "to make contracts, incur liabilities, manage the whole business and dispose of the whole property of the partnership, for its purposes, in the same manner and with the same power as all the partners could when acting together." *Dwinel* v. *Stone*, 30 Maine, 384.

The nonsuit was directed on the ground that the contract

made the parties thereto a legal partnership, and it was erroneous.      *Exceptions sustained* —

*Nonsuit removed* — *and*

*New trial granted.*

RICE, CUTTING, MAY and KENT, JJ., concurred.
APPLETON, J., non-concurred.